Peter J. BRENNAN, Secretary of the U. S. Department of Labor, Petitioner,

v.

SMOKE–CRAFT, INC., and Occupational Safety and Health Review Commission, Respondent.

No. 74–2359.

United States Court of Appeals, Ninth Circuit.

Feb. 13, 1976.

Anthony J. Steinmeyer (argued), Civ. Div., U. S. Dept. of Justice, Washington, D. C., for petitioner.

OPINION

Before: HUFSTEDLER and WRIGHT, Circuit Judges, and SHARP,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The Secretary of Labor has petitioned us to review an order of the Occupational Safety and Health Review Commission (OSHRC). The Commission found that the respondent did not commit a non-serious violation of the Occupational Safety and Health Act [29 U.S.C. § 651 *et seq.*]. Because we find that the Commission's decision is not supported by substantial evidence when the record is considered as a whole,[1] we reverse and remand.

Respondent is a sausage manufacturer. One of its operations consists of cutting 48-inch "beef sticks" into smaller sausage pieces. This is done by placing the long sticks in a miter box whose sides are grooved at intervals corresponding to the lengths to which the sections are to be cut. The grooves guide the portable reciprocating saw as it makes the cuts. The operation requires two employees, one controlling the saw while the other handles the sticks.

---

* Honorable Morell E. Sharp, United States District Judge for the Western District of Washington, sitting by designation.

1. This court's scope of review under the Act is set forth in 29 U.S.C. § 660(a).

After the sticks are initially placed in the miter box, their ends are cut outside the protection of the miter box. The employee holding the sticks must place his hands within two inches of the saw blade as the cuts are made.

An Occupational Safety and Health Act compliance officer witnessed this procedure in the course of a routine inspection of respondent's plant. The Secretary then cited respondent for a serious violation[2] of the Act because the employees did not wear protective gloves while cutting the sausage ends.[3] Respondent was also cited for other serious and non-serious violations of the Act which are no longer at issue. It is undisputed that respondent has since abated most of the practices alleged as violations including the failure to use protective gloves in the sausage cutting operation.[4]

Pursuant to the statutory scheme, respondent initially contested all of the citations.[5] The Secretary then filed a complaint with OSHRC and the case was heard by an administrative law judge. After disposing of the other citations, the administrative law judge found that, while the sausage cutting operation constituted a hazard, it was not likely to result in death or serious physical harm and he reduced the citation to a non-serious violation and vacated the proposed penalty.

On review of his decision, the Commission vacated the citation altogether. It reasoned that, although the petitioner had shown a hazard to exist, no showing was made as required by 29 C.F.R. § 1910.132(a) that the hazard necessitated the use of protective equipment. The Secretary petitioned this court to set aside the Commission's order.[6]

The Commission's determination was based on two factors. First, it pointed to respondent's safety record. In the ten years of respondent's use of this method of cutting sausages, no resulting injuries had been reported. Thus the Commis-

---

**2.** The Act distinguishes between serious and non-serious violations. Serious violations are defined in 29 U.S.C. § 666(j), but no definition of non-serious violations is provided. *See Brennan v. OSHRC,* 511 F.2d 1139, 1142 (9th Cir. 1975).

**3.** The citation alleged that respondent violated 29 U.S.C. § 654(a)(2) by failing to comply with 29 C.F.R. § 1910.132(a), a safety standard promulgated under the Act. The standard reads:

"Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact."

**4.** The only practices alleged as violations which were not abated were subsequently found not to be violations by the administrative law judge.

**5.** 29 U.S.C. § 659(a) provides that the employer has fifteen days after receiving notice of the Secretary's citation to indicate its intent to contest. If no such intent is indicated, the citation is deemed a final order of the Commission not subject to review by any court or agency.

A difficulty arises in this case because respondent first contested the citations but subsequently admitted several. The administrative law judge held the admissions foreclosed review as to them pursuant to § 659(a) even though they were initially contested. The Commission reversed this portion of the law judge's decision declaring that the admission of once contested citations does not foreclose review. But, the Commission went on to affirm the citations on the basis of the admissions.

Since no party on appeal objects to this disposition, we need not determine whether it was proper. Moreover, we are in agreement with the Fifth Circuit which stated when faced with a similar situation:

"In view of the total silence of [the employer], its desire not to litigate or contest the action of the Secretary, and its expressed willingness to comply fully with the Secretary's findings and order, we deem it unnecessary to resolve the numerous complicated and contentious claims . . . ."

*Brennan v. OSHRC,* 481 F.2d 619, 620 (5th Cir. 1973). *But see Brennan v. OSHRC,* 487 F.2d 438 (8th Cir. 1973).

**6.** Respondent did not file a brief with this court although it had actively contested this citation in the proceedings below. We do not infer that respondent has withdrawn its contest. *See Brennan v. OSHRC,* 502 F.2d 946, 948 (3d Cir. 1974).

sion concluded "an injury, while possible, is highly unlikely." (R. 95). Secondly, the Commission found that the hazard was not known in the sausage manufacturing industry as one requiring protective equipment. This was further evidence that protective equipment was unnecessary.

The Commission order is premised on the rationale that protective equipment must be necessary in light of a hazard before a failure to provide it will constitute a violation of 29 C.F.R. § 1910.-132(a). This comports with the test set forth in *Cape & Vineyard Div. v. OSHRC*, 512 F.2d 1148, 1152 (1st Cir. 1975):

> But in any event OSHA had to establish here that a prudent man familiar with [industry practice] would have understood that more protective equipment was "necessary" in the situation at issue.

*See also McLean Trucking Co. v. OSHRC*, 503 F.2d 8, 11 (4th Cir. 1974); *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir. 1974).

Since the determination whether a reasonably prudent man familiar with the practices of the industry would protect against the alleged hazard may often be made by reference to the custom of the relevant industry, *Cape & Vineyard Div., supra* at 1152, the Commission's reference to industry practice was relevant.

We are unable to discern any support in the record, however, for the finding that the sausage manufacturing industry does not require protective gloves in similar situations. In fact, there appears to be no industry custom to which to refer as a guideline. Respondent's president testified that its sausage cutting process was unique. As a result, there is no relevant industry custom to which respondent's conduct may be compared.

In the absence of a relevant industry custom or practice to which to refer, we must determine if there is substantial evidence on the record to support the conclusion that a reasonably prudent man familiar with the industry would find necessary to protect against this hazard. Respondent's accident free safety record, standing alone, cannot support the Commission's order.

While the fact that respondent's employees have never reported an injury resulting from the cutting process may be some evidence as to whether a reasonably prudent man would protect against such a hazard, it is not conclusive.[7] "One purpose of the Act is to prevent the first accident." *Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F.2d 864, 870 (10th Cir. 1975). The goal would not be achieved if the Secretary were required to await an accident before issuing a citation. Petitioner need not show the occurrence of actual injury before citing an employer for violation of the Act. *Lee Way Motor Freight, supra* at 870; *Ryder Truck Lines, supra* at 233.

The administrative law judge and at least two of the commissioners recognized that the sausage cutting process involved some risk of physical injury.[8] No evidence other than the respondent's safety record was presented on the question whether a reasonably prudent man would find that precautions against this hazard were necessary. Consequently, we cannot conclude that the Commission's order vacating the citation because protective equipment was unnecessary was supported by substantial evidence.

The order of the Commission is reversed in so far as it vacated the citation for this violation. The cause is remanded to the Commission for further proceedings consistent with this opinion.

---

7. The employer's safety record is, of course, also relevant to determine the gravity of the violation and the appropriate sanction therefor. *Lee Way Motor Freight, supra* at 870.

8. One of the commissioners concurred in vacating the citation on other grounds and did not express a view whether respondent's sausage cutting operation represented a hazard.