GREYHOUND LINES–WEST, and Greyhound Lines, Inc., Petitioners,

v.

Ray MARSHALL, Secretary of Labor, and Occupational Safety and Health Review Commission, Respondents.

Nos. 76–2608, 76–3246.

United States Court of Appeals, Ninth Circuit.

May 25, 1978.

J. Thomas Rosch (argued), of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for petitioners.

John A. Bryson (argued), of U.S. Dept. of Labor, Washington, D.C., for respondents.

Before ELY and CARTER, Circuit Judges, and INGRAM,* District Judge.

JAMES M. CARTER, Circuit Judge:

Greyhound Lines-West and Greyhound Lines, Inc. (hereafter referred to collectively as "Greyhound") petition for review of an administrative determination that they violated the Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651 *et seq.*, by failing to provide safety railings or covers for their open bus service pits. Greyhound raises the following issues: (1) is 29 C.F.R. § 1910.22(c) applicable to Greyhound's bus maintenance pits? and if so, (2) did the Secretary of Labor carry his burden of proof in showing a violation?

These consolidated petitions for review involve two separate pits, one in Salt Lake City, Utah, and one in Billings, Montana. In both cities Greyhound operates bus maintenance garages housing open pits used to service its buses. When the pits are being used for maintenance they are completely covered by a bus, but when not in use they are open and unprotected by guardrails or covers. The Salt Lake City pit is outlined by a four-inch yellow stripe. The Billings pit is edged by a two-inch metal strip.

* Honorable William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

## I.  SCOPE OF § 1910.22(c).

29 U.S.C. § 654(a)(2) provides that "Each employer—shall comply with occupational safety and health standards promulgated under this chapter".  The regulations at 29 C.F.R. § 1910.22 contain the following standard:

"SUBPART  D—WALKING  AND WORKING SURFACES

\*  \*  \*  \*  \*  \*

"§ 1910.22 *General Requirements*.

"This section applies to all permanent places of employment, except where domestic mining, or agricultural work only is performed.  \* \* \*

\*  \*  \*  \*  \*  \*

"(c) *Covers and guardrails*.  Covers and/or guardrails shall be provided to protect personnel from the hazards of open pits, tanks, vats, ditches, etc."

■  By its plain language this regulation applies to the bus maintenance pits operated by Greyhound.  The pits are situated in a walking and working surface at a permanent place of employment and they are open as opposed to covered, except, of course, when there is a bus over them.  In a very similar case the Tenth Circuit construed this section of the regulations to apply to vehicle maintenance pits.  *Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F.2d 864 (10 Cir. 1975) (§ 1910.-22(c) applies to vehicle maintenance pits used to service tractor-trailer rigs used in trucking.).

■  Greyhound makes a two-pronged attack on the applicability of § 1910.22(c) of the regulations to their bus maintenance pits.  First, Greyhound contends the requirement that open pits be guarded or covered was intended to apply only to pits used for handling and storage of materials. § 1910.22(c) derives from 41 C.F.R. § 50–204.3 (1970) which was promulgated under the Walsh-Healy Act of 1936.  That standard did fall under the general category of "material handling and storage".  However, when authorized to formulate new standards for the OSHA, the Secretary of Labor was not limited to the scope of prior acts, but was charged with implementing the purpose of the OSHA which was in a principle part to "extend protection to many workers who had not been covered by previous standards." *Lee Way Motor Freight, supra* at 869.  Under the new regulations the guardrail and cover requirement for open pits was extended beyond material handling and storage situations.  It now applies to "walking and working surfaces" in "all permanent places of employment".  *See Lee Way Motor Freight, supra.*

■  Second, Greyhound contends its pits are not "open" within the meaning of the regulatory scheme.  Greyhound argues that the regulatory scheme presupposes three kinds of "pits".  First, § 1910.22(c) defines pits which, says Greyhound, are *always open*.  Second, § 1910.23(a)(5) applies to pits which are *infrequently used*, requiring them to be covered or constantly guarded or protected.[1]  The third type of pit, according to the argument, is that which is *frequently used, but not always open*.  These pits are not mentioned in the regulations and thus have not been subjected to any standards if Greyhound is correct.

Greyhound has cited no legislative or regulatory history, no case precedent, nor any other support for its interpretation of the regulatory scheme.  It makes virtually no attempt to explain why the word "open" in the regulation should be construed to read "always open".  Nor does it argue from policy that there is no reason to protect employees from pits which are sometimes closed by use.

Stripped of its attempt to suggest a three-fold approach to "pits" in the regulatory scheme by introducing the otherwise

---

1.  29 C.F.R. § 1910.23(a)(5).
"Every pit and trapdoor floor opening, infrequently used, shall be guarded by a floor opening cover of standard strength and construction.  While the cover is not in place, the pit or trap opening shall be constantly attended by someone or shall be protected on all exposed sides by removable standard railings."

irrelevant provisions of § 1910.23(a)(5), Greyhound's contention is merely that its pits should not be called open pits because they are frequently covered by buses. We refuse to adopt such a restrictive construction of the regulation. The Secretary is not requiring that Greyhound protect its pits by covers or railings when they are in use. Rather he requires the pit, *when it is open,* to be safeguarded.

## II. SUFFICIENCY OF THE EVIDENCE.

■ The OSHA itself provides the controlling standard of judicial review of the Commission's factual findings. Such findings are conclusive "if supported by substantial evidence on the record considered as a whole". 29 U.S.C. § 660(a). Greyhound contends the Secretary has failed this burden because he was required to prove that a reasonable person in the industry would have considered protective coverings or railings necessary for bus maintenance pits. This contention, however, is based on a misapplication of a series of cases dealing with the due process requirement of notice as related to vague regulations. If the Secretary promulgates an open-ended standard, he is required by due process to prove the reasonableness of its application in each case to assure that parties subject to its terms have been fairly warned. *See Cape & Vineyard Division v. OSHRC,* 512 F.2d 1148 (1 Cir. 1975). However, the Secretary can promulgate specific standards without the necessity of proving the existence of a hazard each time the standard is enforced.

■ Greyhound cannot seriously challenge § 1910.22(c) as being void for vagueness. It specifically defines the hazard it regulates to be "open pits" in walking and working surfaces. The Secretary need only prove a regulatory standard and its violation to state a prima facie violation. Here the standard of § 1910.22(c) is specific and its violation is conceded in the stipulated facts. We have reviewed the evidence in the case and find it adequately supports the Secretary's findings.

Finally, Greyhound asserts two affirmative defenses. It contends: (1) compliance with the standard would be more hazardous than noncompliance; and (2) noncompliance is necessary to enable Greyhound to accomplish its required work on the buses. If proven, either of these is a valid excuse from compliance. *See United States Steel Corp. v. OSHRC,* 537 F.2d 780 (3 Cir. 1976); *Secretary v. Consolidated Engineering, Inc.,* 12 OSAHRC 490 (1974).

These defenses are narrowly construed and the burden of their proof lies with the employer. Furthermore, the Commission has rejected these contentions and this factual determination by the Commission is conclusive if supported by substantial evidence on the record as a whole. *See U.S. Steel Corp. v. OSHRC, supra* at 782.

■ The only testimony given in support of either defense was by Greyhound's safety director. But his opinion was based on only one manner of compliance and was conceded to be unsupported by experience. Expert testimony, particularly when unsupported by other evidence and given by an interested witness need not be accepted even if uncontradicted. *U.S. Steel Corp. v. OSHRC, supra* at 783. The Commission's judgment that the hazards of falling into unguarded pits are greater than the hazards of injury from working with railings or covers and that compliance by Greyhound would not prevent it from servicing its buses was well within the Commission's discretion.

The orders of the Occupational Safety & Health Review Commission are AFFIRMED.