EXXON CORPORATION,
Plaintiff-Appellant,

v.

George D. BUSBEE, Etc. et
al., Defendants,

Georgia Association of Petroleum
Retailers, Defendant-Appellee.

GEORGIA OILMEN'S ASSOCIATION,
INC., Plaintiff-Appellant,

v.

George D. BUSBEE, Etc. et
al., Defendants,

Georgia Association of Petroleum
Retailers, Defendant-Appellee.

No. 80–7153.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 11, 1981.

Rene J. Mouledoux, Bernard J. Caillouet, New Orleans, La., Robert G. Abrams, Stuart H. Harris, Washington, D. C., for Exxon Corp.

Robert S. Jones, Julie Childs, Peyton S. Hawes, Jr., Atlanta, Ga., for Georgia Ass'n of Petroleum Retailers.

Before TJOFLAT, FRANK M. JOHNSON, Jr., Circuit Judges and SCOTT *, District Judge.

---

* District Judge of the Middle District of Florida, sitting by designation.

TJOFLAT, Circuit Judge:

Exxon Corporation and the Georgia Oilmen's Association have appealed from part of the district court's resolution of their consolidated declaratory judgment actions. *See* 28 U.S.C. §§ 2201 & 2202 (1976). We affirm the decision of the district court, 484 F.Supp. 1008.

### I

Georgia originally enacted its Gasoline Marketing Practices Act, Ga.Code § 106–1101 *et seq.*, in 1973. Its avowed purpose was to regulate marketing agreements between gasoline distributors and gasoline dealers. Record, vol. 1 at 27. In furtherance of this purpose, Georgia amended the Act in 1978 to include new section 1104.1. That provision reads:

It shall be an unlawful predatory and unfair business practice for an automotive gasoline distributor who controls product supply, controls the price of the product and has the power to require the purchase of that product by another automotive gasoline distributor or an automotive dealer doing business in this State to sell said product at prevailing automotive gasoline distributor prices at any time to another automotive gasoline distributor for resale to automotive gasoline dealers with the purpose or intent that said product will be sold at retail by said automotive gasoline distributor and fails to offer its automotive gasoline dealers an opportunity to purchase an equal volume of product upon the same terms and conditions, excepting expenses for advertising, credit cards and other expenses relative to its automotive gasoline dealers, when said automotive gasoline distributor is selling said product at distress prices to

other automotive gasoline dealers in the dealer's marketing area.
Ga.Code § 106–1104.1

Soon after the legislature passed this amendment, Exxon Corporation and the Georgia Oilmen's Association filed separate declaratory judgment actions challenging section 1104.1 as unconstitutionally vague and unenforceable.[1] These actions were subsequently consolidated. Record, vol. 1 at 113.[2]

After each party moved for summary judgment, the district court entered an order holding section 1104.1 constitutional. Although the court found the statute to be "ambiguous," "imprecise," and "grammatically deficient," record, vol. 2 at 350, it upheld the statute because it was not "impossible to divine," *id.* at 352, and thus not so completely indefinite as to deny appellants due process. *Id.* at 350, quoting *A. B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 597 (1925).

### II

We feel constrained by considerations of comity and ripeness to examine the propriety of reaching the merits of this dispute. Our first concern is for the prerequisite of a ripe controversy. *See Federal Election Commission v. Lance*, 635 F.2d 1132, 1138 (5th Cir. 1981).

On rebriefing ordered by the court, appellants assert that because they presently are obligated to conform their conduct to section 1104.1, and because there is an imminent threat of litigation potentially resulting in liability, the controversy before the court is ripe for decision. These assertions, standing alone, are not enough to justify opining on the question before us. The contingency of future litigation may

---

1. These actions sought judicial declarations concerning numerous provisions of the Gasoline Marketing Practices Act. *See* record, vol. 1 at 4; *id.*, vol. 1 N–61 at 4. This appeal, however, is concerned solely with the district court's ruling on the validity of section 1104.1.

Both Exxon and the Oilmen's Association originally named Georgia Governor Busbee and

State Attorney General Bolton as parties-defendant; the Oilmen's complaint also named the Georgia Association of Petroleum Retailers. Thereafter, the Governor and Attorney General were dismissed as parties, and Exxon amended its complaint to name the Georgia Association of Petroleum Retailers as defendant.

not be offered successfully as the basis for present judicial action. *Id.*, quoting 13 *Wright, Miller & Cooper, Federal Practice and Procedure* § 3532 (1975). The district court found, however, that "civil actions authorized by the [Gasoline Marketing Practices] Act are imminent" and therefore that the controversy concerning the enforceability of section 1104.1 was a live, ripe one. Record, vol. 2 N–61 at 336, *citing Blanchette v. Connecticut General Insurance Corps*, 419 U.S. 102, 138–142, 95 S.Ct. 335, 356–358, 42 L.Ed.2d 320 (1974).

█ We cannot say that the district court was clearly erroneous in finding it certain that litigation under the Act would immediately arise among these parties. Given that finding, and the immediate applicability to appellants of section 1104.1, *see Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 507, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972), we believe the parties have presented us with a ripe, justiciable controversy concerning the enforceability of section 1104.1. *See id.* at 506, 92 S.Ct. at 1755.

█ Next, because section 1104.1 has yet to be interpreted by the Georgia courts, and because commercial regulation is a matter of legitimate interest to the state, we must examine whether *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), mandates staying our hand in this dispute. On reflection, it appears that *Pullman* does not so mandate.

As we clarified in *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980), two conditions must exist before *Pullman* abstention is necessary: "an unsettled issue of state law; and . . . a possibility that the state law determination will moot or present in a different posture the federal constitutional question raised." In this case, the second condition is absent. Section 1104.1 has been attacked as unconstitutionally vague. Because section 1104.1 is a non-penal, commercial regulatory statute, the standard for evaluating its constitutionality is whether the statute is so indefinite as to amount to

"no rule or standard at all." *A. B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 239, 45 S.Ct. 295, 297 (1925). *See also infra* at p. 5. Yet in the context of this case, in order to find *Pullman* abstention necessary, we would have to find that a state court *could* possibly decide that section 1104.1 was comprehensible, and thus enforceable; only if the state court finds it comprehensible can it then moot the constitutional challenge or present it in a different posture. Acknowledging the bare possibility that the state court could find the statute comprehensible, however, would in itself be a *sub silentio* determination of the federal constitutional question for decision—whether section 1104.1 is indeed capable of interpretation. Thus, a decision to abstain here would be tantamount to a decision, albeit nonbinding, on the constitutional adequacy of the statute. *See Baggett v. Bullitt*, 377 U.S. 360, 376–77 n.13, 84 S.Ct. 1316, 1325–26 n.13, 12 L.Ed.2d 377 (1964). Abstention, therefore, would defeat the purpose behind *Pullman*, while engendering needless delay, expense, and duplication of judicial activity. *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440 (1964). Under these circumstances, we decline to stay our hand, and will proceed to the merits.

On appeal, Exxon and the Oilmen's Association assert that section 1104.1 is completely incomprehensible; they argue that even under the lenient standard of review employed when a state civil statute is subjected to a vagueness attack in federal court, section 1104.1 must fall because it "is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Brief of Exxon Corporation* at 11, quoting *Brennan v. Occupational Safety and Health Review Commission*, 505 F.2d 869, 872 (10th Cir. 1974). Indeed, appellants state that despite a painstaking analysis of the statute, it "*impossible* to determine either the natur of the proscribed conduct or the persons which the proscriptions were intended

apply." *Brief of Exxon Corporation* at 14 (emphasis added).[3]

To further the health and well-being of our adversarial system of justice, appellee, the Georgia Association of Petroleum Retailers, has provided the court with a "simple analysis" of section 1104.1 in order to illustrate its intelligibility. The cumulation of that analysis is a conclusory declaration that "[t]he nature and scope of the proscribed activity *could hardly be made clearer." Brief of Georgia Association of Petroleum Retailers* at 16–17 (emphasis added).

While it is true that the void-for-vagueness doctrine is most rigorously applied in the context of penal statutes, *Federal Election Commission v. Lance*, 635 F.2d at 1142, and in the area of first amendment rights, *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir. 1974), the Supreme Court has recognized that "[v]ague laws in *any* area suffer a constitutional infirmity." *Ashton v. Kentucky*, 384 U.S. 195, 200, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966) (emphasis added). *See also Reeves v. McConn*, 631 F.2d 377, 383 (5th Cir. 1980).

Because it has become too easy for all concerned to discuss the void-for-vagueness doctrine without articulating either its constitutional foundation or its implication for different types of statutes, we will quote at length from a Supreme Court discussion that clarifies the theory behind the rule. In *A. B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 597 (1925), the Court faced a contract dispute in which one of the parties argued that a statutory defense offered by its adversary was negated by the undue vagueness of the statute it was based upon. The adversary responded that what we now refer to as the void-for-vagueness doctrine did not apply outside the criminal arena. The Court rejected this distinction:

> In a series of cases . . . this court held [the relevant] provision invalid as contra-

vening the due process of law clause of the Fifth Amendment, among others, because it required that the transactions named should conform to a rule or standard which was so vague and indefinite that no one could know what it was . . . .

> The defendant attempts to distinguish those cases because they were criminal prosecutions. But that is not an adequate distinction. The ground or principle of the decisions was not such as to be applicable only to criminal prosecutions. It was not the criminal penalty that was held invalid, *but the exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all.* Any other means of exaction, such as declaring the transaction unlawful or stripping a participant of his rights under it, was equally within the principle of those cases.

*Id.* at 238–239, 45 S.Ct. at 297.

▉ Thus, section 1104.1 may not escape scrutiny simply because it is a commercial regulatory statute. *See Brennan v. Occupational Safety and Health Review Commission*, 505 F.2d 869 (10th Cir. 1974). Because the statute is not concerned with either the first amendment or the definition of criminal conduct, however, we must be lenient in evaluating its constitutionality. For section 1104.1 to constitute a deprivation of due process, it must be "so vague and indefinite as really to be no rule or standard at all." *A. B. Small Co.*, 267 U.S. at 239, 45 S.Ct. at 297 (1925). To paraphrase, uncertainty in this statute is not enough for it to be unconstitutionally vague; rather, it must be substantially incomprehensible.

▉ Having applied this test to the statute before us, we find that the district court did not err in ruling it definite enough. Surely, as is tacitly admitted by the parties before us, it can be ascertained that the statute applies to gasoline distributors such

---

. Appellants complain both of the overall unintelligibility of § 1104.1 and of the added indefiniteness allegedly caused by the inclusion of the undefined, yet apparently controlling phrases, "distress prices," "controls product sup-

ply," "controls the price of the product," and "has the power to require the purchase of that product." *See Brief of Exxon Corporation* at 14.

**1034**

as Exxon. Moreover, while their constructions differ, the parties themselves have offered possible interpretations of section 1104.1. *See* Record, vol. 2 at 351–352. These attempts at statutory construction illustrate that section 1104.1 is, while most assuredly *not* a "model of clarity," *id.* at 350, at least amenable to some sensible construction. Thus, it does alert the parties to the character of the proscribed conduct, *Ryder Truck Lines*, 497 F.2d at 233, and does amount to something more than "no rule ... at all." *A. B. Small Co.*, 267 U.S. at 239, 45 S.Ct. 297.

In the context of this declaratory judgment action, it is not for us to offer a definitive interpretation of section 1104.1. Rather, our only role is to determine whether, indeed, the statute *may* be interpreted. Since it may, the decision of the district court must be AFFIRMED.