**LONG BEACH CONTAINER TERMINAL, INC.,**
Petitioner,

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and William E. Brock, Secretary of Labor, Respondents.**

No. 86–7077.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1987.

Decided Feb. 23, 1987.

Deborah Reid Kelley, Long Beach, Cal., for petitioner.

Laura V. Fargas, Washington, D.C., for respondents.

Before KENNEDY, SCHROEDER and POOLE, Circuit Judges.

SCHROEDER, Circuit Judge:

Long Beach Container Terminal (LBCT) is a company providing stevedore services. LBCT petitions this court to review an Occupational Safety and Health Review Commission order assessing an $800 penalty against it for violations of section 5(a)(2) of the Occupational Health and Safety Act, 29 U.S.C. § 654(a)(2) (1982). The Commission held that LBCT failed to provide full protection to employees as required under the standard set forth in 29 C.F.R. § 1918.32(b) (1984). This standard mandates the use of a safety net or other protection when employees are working on top of cargo more than eight feet high.

These enforcement proceedings arose out of a fatal accident which occurred while employees of LBCT were unlocking containers on the deck of a ship. Two employees on top of a thirty-four foot high stack of containers were working without any protective devices such as safety belts, harnesses attached to a safety line, or nets. One of the employees fell to his death.

Section 1918.32, entitled "Stowed cargo and temporary landing platforms," provides:

(b) When an edge of a hatch section or of stowed cargo more than 8 feet high is so exposed that it presents a danger of an employee falling, the edge shall be guarded by a safety net [of] adequate strength to prevent injury to a falling employee, or by other means providing equal protection under the existing circumstances.

LBCT argues that this safety standard was not intended to apply to cargo stored on a ship's deck. The words of the regulation make no exception, however, for cargo

stowed on the deck rather than below. Moreover, OSHA's Compliance Instruction, CPL 2–1.17 (Aug. 30, 1982), states that the standard is indeed applicable to containers stowed on deck. Petitioner describes no practical safety distinction between working on top of cargo that is on the deck and cargo below the deck. Employees working on top of the containers face the same hazards.

The Commission itself has consistently held that the regulation makes no on deck/below deck distinction. *Chesapeake Operating Co.*, 1982 Occ. Safety & Health Dec. (CCH) ¶ 26,142; *Seattle Crescent Container Service*, 1979 Occ. Safety & Health Dec. (CCH) ¶ 24,002. The Commission's rulings are entitled to deference. *California Stevedore and Ballast Co. v. OSHRC*, 517 F.2d 986, 988 (9th Cir.1975).

LBCT here claims to have discovered new and controlling authority for the proposition that section 1918.32(b) was intended to apply only to situations occurring in the holds of vessels. Petitioner cites an internal staff memo written by the employee who drafted the standard. The memo, which was written years after the Secretary promulgated the regulation, states that "[a]ll concerned were aware at that time and subsequently that Section 1918.-32, including (b), was intended to apply to situations occurring in the holds of vessels, and not on deckloads."

This memorandum cannot bear the weight LBCT assigns it. The memo expresses the view of a particular staff member, not the official view of the Secretary. Standards are not "authored" by one person; they are the product of an institutional process. It is the Secretary who promulgates the standards, and the Secretary's official statements must be the guide as to their meaning.

It is a well-established principle that statements concerning legislative intent made by individual members of Congress subsequent to the enactment of legislation are not authoritative. *E.g., Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 117–18, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980). Because an administrative agency staff member involved in drafting a regulation is not the promulgating authority, his subsequent remarks merit even less weight than do members of Congress' statements made in subsequent congressional sessions with respect to the original meaning of a statute. Moreover, because courts are usually prohibited from inquiring into an administrator's decision making mental process, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971), it follows that the mental processes of staff members are totally irrelevant. *See generally* K. Davis, *Administrative Law Treatise* § 17:1–17:8 (1980) (discussing role of staff and probing mental processes).

Petitioner also contends that certain findings of fact of the administrative law judge are not supported by substantial evidence in the record as a whole. These findings conclude that although safety nets may have been impractical to use under the circumstances of this case, LBCT could have utilized other protective devices. LBCT contends that compliance with section 1918.32(b)(2) is in fact impossible.

The defense of impossibility is narrowly construed and the burden lies with the employer. *See Greyhound Lines-West v. Marshall*, 575 F.2d 759, 762 (9th Cir.1978). As the ALJ in this case noted, the defense will not be sustained if an employer shows merely that compliance would be difficult, inconvenient, or expensive. *See Lee Way Motor Freight, Inc.*, 1973–74 Occ. Safety & Health Dec. (CCH) ¶ 17,693, *aff'd*, 511 F.2d 864 (10th Cir.1975). The record indicates that LBCT's own vice-president's testimony detailed a workable method of abatement, and affirmed that compliance was in fact feasible. The petition for review therefore is denied.