578 F.2d 38
 6 O.S.H. Cas.(BNA) 1691, 1978 O.S.H.D. (CCH) P 22,838
AMERICAN AIRLINES, INC., Petitioner,
v.
SECRETARY OF LABOR, and Occupational Safety and Health
Review Commission, Respondents.
 No. 954, Docket 78-4018.
 United States Court of Appeals,
Second Circuit.
 Argued June 8, 1978.
Decided June 21, 1978.
 
 Glen E. Walker, New York City, for petitioner.
 Thomas Holzman, Washington, D. C. (Carin A. Clauss, Sol. of Labor; Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health; Allen H. Feldman, Acting Counsel for Appellate Litigation; Dennis K. Kade, Asst. Counsel for Appellate Litigation; Charles I. Hadden, Atty., Washington, D. C.; Francis V. La Ruffa, Regional Sol., New York City, of counsel), for respondents.
 Before KAUFMAN, Chief Judge, FEINBERG, Circuit Judge, and WERKER, District Judge.*
 IRVING R. KAUFMAN, Chief Judge:
 
 
 1
 We are asked to decide whether the Occupational Safety and Health Review Commission, in construing its protective equipment regulation, correctly determined that American Airlines must require all its cargo handlers to wear steel-toed safety shoes to meet its responsibilities under that standard. We recognize that OSHA's efforts have contributed significantly to the health and welfare of our nation's work force. Moreover, we are not unmindful that deference should be accorded an agency's interpretation of its own regulations.[1] Nevertheless, we conclude that the Commission failed properly to consider whether the extensive precautions already undertaken by American adequately protected its workers in accordance with OSHA's regulation.
 
 I.
 
 2
 American Airlines operates a cargo terminal at Kennedy International Airport. This facility, constructed at a cost of $13 million in 1972, is extensively automated. Nevertheless, certain tasks are still manually performed by approximately 105 cargo handlers. These workers must load and unload igloo-shaped containers of freight, removing in the process doors weighing up to sixty pounds, lift heavy cargo in metal and wooden crates with the aid of forklifts, and maneuver crates weighing up to fifty pounds. American requires its cargo handlers to wear sturdy work shoes while on duty, and provides instruction how to lift and load the cargo safely. These precautions are augmented by a program permitting employees to purchase steel-toed shoes through a payroll deduction plan. Thirty-six employees have availed themselves of this plan.
 
 
 3
 The protective measures adopted by the airlines are consonant with the 1973 cargo terminal recommendations of the Industrial Safety and Health Committee of the Airtransport Association of America, and conform to present practice within the industry.[2] Moreover, these precautions seem to have been successful in keeping the incidence and severity of injuries occasioned by falling doors and freight at a minimum. Between 1971, the year before the construction of the new cargo facility and 1975, the year in which American was cited by OSHA for failure to comply with the regulation in question, only eleven injuries to the feet were reported. Several of these accidents, the record discloses, occurred because workers failed to comply with company rules and three occurred on aircraft outside the area giving rise to the violation in this case.
 
 
 4
 Against this background, the instant dispute took shape. On March 4, 1975, Arthur Lind, an OSHA compliance officer, inspected American's cargo terminal at Kennedy. Thereafter, he issued a number of citations for nonserious violations of OSHA's regulations. American contested only one citation, ordering American to require its cargo handlers to wear steel-toed safety shoes, and assessing a penalty of $45 for this alleged violation of its protective equipment regulation, 29 C.F.R. § 1910.132.[3]
 
 
 5
 At the hearing on American's claim, OSHA sought to establish that American's cargo handlers were exposed to injury from falling cartons of freight and igloo doors. To support its contention, OSHA introduced into evidence the eleven accident reports relating to injuries to the feet, and presented testimony of American employees tending to establish the existence of a hazard. In particular, OSHA's case focused on the fact that igloo doors sometimes became "stuck", and were dropped by employees who had to exert additional pressure to dislodge them. OSHA also sought to demonstrate that the doors occasionally fell on an employee's foot when removed from the igloo container and improperly balanced. Finally, the testimony presented by OSHA suggested that cargo in metal or wooden crates could fall off forklifts or handcarts used by handlers.
 
 
 6
 American, OSHA argues, conceded the existence of these dangers and the efficacy of steel-toed shoes as an ameliorative measure when it instituted its payroll deduction plan and chose to display steel-toed shoes near the employee punch clock. OSHA asserted that American also encouraged those workers who had been injured on one occasion to buy the protective footwear.
 
 
 7
 American, in turn, urged that the protective equipment regulation was unconstitutionally vague. It also claimed that the safety measures then in effect were all that a reasonably prudent man, conversant with the circumstances of the industry, would require. Specifically, American objected to OSHA's attempt to use the precautionary measures adopted by American as a bootstrap to mandate the introduction of more stringent protection or as an admission by American that something more was necessary.
 
 
 8
 Administrative Law Judge Gold upheld the citation, finding that the safety measures taken by American should be judged solely on whether they were reasonable, apparently without considering prevailing industry standards. Applying this test, he held they fell short of the requirement. The Commission affirmed, relying heavily on the testimony indicating the existence of a hazard of foot injuries, and on the limited history of actual injuries.[4] This petition for review ensued.
 
 II.
 
 9
 OSHA argues that we need only consider whether there is substantial evidence on the record as a whole to support its determination. American, however, urges us to determine whether the application of the Commission's regulation constituted an abuse of discretion. Although it is well established that our powers to review the substantive determination of agencies are limited, see Atlantic & Gulf Stevedores, Inc. v. OSHRC, 534 F.2d 541, 551-52 (3d Cir. 1976), it is within the scope of our oversight responsibilities to ascertain whether the Commission applied the correct legal standard, see Arkansas-Best Freight Systems, Inc. v. OSHRC, 529 F.2d 649, 653 (8th Cir. 1976). We conclude that it did not.
 
 
 10
 American does not dispute that OSHA's personal protective equipment regulation is sufficiently specific to withstand a general attack for vagueness, Ryder Truck Lines, Inc. v. Brennan, 497 F.2d 230, 233 (5th Cir. 1974); McLean Trucking Co. v. OSHRC, 503 F.2d 8, 10 (4th Cir. 1974). To impart the requisite specificity to this provision, courts, construing it in the context of the trucking industry, have implied a general "reasonableness" standard. Accordingly they have concluded that an employer must provide the personal protective equipment that a reasonable man would deem sufficient under the circumstances, Ryder Truck Lines, supra at 233; McLean Trucking, supra at 10. Recent cases have refined the test to suggest that the type and extent of personal protective equipment required should be determined with reference to the views of a hypothetical reasonable man familiar with the circumstances of the industry. See Cape and Vineyard Division of the New Bedford Gas and Edison Light Co. v. OSHRC, 512 F.2d 1148 (1st Cir. 1975); United Parcel Service of Ohio v. OSHRC, 570 F.2d 806 (8th Cir. 1978). The implication of such an objective standard, proscribing "conduct unacceptable in light of the common understanding and experience of those working in the industry", Cape and Vineyard, supra, at 1152, is that it provides the affected industry with sufficient notice of its responsibilities under what would otherwise be an extremely vague regulation.[5] At the same time, we note that OSHA is not precluded from promulgating, after notice and comment, new and specific regulations requiring safety precautions beyond those considered reasonable in the industry.
 
 
 11
 The Commission, therefore, erred in considering merely whether "a reasonable person would be appraised (sic) of a hazard to feet" in the American facility. American Airlines, Inc., 6 OSHC 1252, 1254 (1977). The Commission failed to consider whether a reasonable man familiar with conditions in the airline industry would have instituted protective measures more elaborate than the precautions taken by American: the payroll plan, the sturdy shoe requirement, the automation of the plant to minimize the need for employees to handle cargo.[6] Nor are we able, on the state of the record before us, to determine what the outcome of such an inquiry would be. On remand, the Commission may also consider the feasibility of imposing corrective measures short of its blanket requirement that all cargo handlers wear steel-toed shoes.[7]
 
 
 12
 Accordingly, we vacate the order of the Commission and remand for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 Strictly speaking, the Commission was not construing its own regulation, since as we noted in Brennan v. OSHRC, 491 F.2d 1340, 1344 (2d Cir. 1974) "the (Occupational Safety and Health) Act entrusts only adjudicatory functions to the Commission while assigning rule-making power and initiation of enforcement proceedings to the Secretary (of Labor)." But where, as here, the Commission and the Secretary unite in an interpretation of a regulation within their joint sphere, the normal degree of judicial deference is appropriate
 
 
 [2]
 It appears from the parties' submissions that only one airline Swiss Air requires its cargo handlers to wear steel-toed shoes
 
 
 [3]
 The regulation reads as follows:
 Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.
 
 
 [4]
 American Airlines, Inc., 6 OSHC 1252 (1977). The Commission also rejected American's claim that permitting OSHA to expand the scope of its complaint by amendment during the hearing violated due process
 
 
 [5]
 OSHA argues that 29 C.F.R. § 1910.136, which sets specifications for safety footwear, is a sufficiently specific provision, and that it requires the use of steel-toed safety shoes whenever a potential hazard to feet is found. OSHA did not raise this contention below, however; in any case, § 1910.136 does not appear to modify the requirements of § 1910.132(a)
 
 
 [6]
 We, of course, intimate no view as to the protective measures appropriate for other categories of airline employee redcaps, passenger baggage handlers, etc
 
 
 [7]
 In light of our conclusion, we need not reach American's due process claim. The simple answer to the contention that the regulation was improperly promulgated is that the objection was not raised before the Commission. Accordingly, American has waived its right to raise it here, see 29 U.S.C. 660(a); Stockwell Mfg. Co. v. Usery, 536 F.2d 1306, 1309 (10th Cir. 1975)