625 F.2d 1075
 8 O.S.H. Cas.(BNA) 1631, 1980 O.S.H.D. (CCH) P 24,587
VOEGELE COMPANY, INC., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray
Marshall, Secretary of Labor, Respondents.
 No. 79-2439.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) June 9, 1980.
Decided June 26, 1980.
 
 Jane A. Lewis, Thorp, Reed & Armstrong, Pittsburgh, Pa., for petitioner.
 Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety & Health, Allen H. Feldman, Counsel for Appellate Litigation, Thomas L. Holzman, Atty., Marshall Harris, Regional Sol., U. S. Dept. of Labor, Washington, D. C., for respondents.
 Before GIBBONS, WEIS and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Voegele Co., Inc. (Voegele) petitions pursuant to 29 U.S.C. § 660(a) (1976) for review of a final order of the Occupational Safety and Health Review Commission (OSHRC) that held Voegele in violation of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678 (1976) (OSHA) for the company's failure to comply with the general safety standard of section 1926.28(a), 29 C.F.R. § 1926.28(a) (1979). We are presented with the question whether OSHRC erred in refusing to apply a standard enunciated by the Fifth Circuit that makes recognized industry practice determinative of whether a violation of section 1926.28(a) has occurred. We conclude that OSHRC applied the correct legal standard and we also affirm that there was substantial evidence to support the finding of a violation.I. FACTUAL AND PROCEDURAL BACKGROUND.
 
 
 2
 Voegele installed a composition roof for an A&P building in Vandergrift, Pennsylvania. The height of the building varied from 14 feet at the front to 35 feet at the rear. The roofs of adjacent buildings limited the fall distance to the ground. However, there was an area of about 15-19 feet from the rear of the building where there were no obstructions. The major portion of the roof was essentially flat, sloping 2-3 degrees downward from the center for drainage. A parapet extended the width of the roof along the front and rear of the building. The front parapet ranged from 18-20 inches in the center to 32-36 inches at either end. The rear parapet varied from 8 inches in the center to 12-14 inches at both ends.
 
 
 3
 Gutters, approximately 18 inches wide and 8 inches deep, extended along the sides of the roof. There were also parapets about 8-10 inches high and 12-18 inches wide on the edge of the roof outside of the gutters. The roof on these two sides of the building sloped sharply into the gutters and dropped 3 feet at about a 45 degree angle. This slope started approximately 4 feet from each edge. The ground surface surrounding the building consisted of concrete or asphalt.
 
 
 4
 On April 12, 1976, OSHA compliance officer Harlan Jarvis conducted an inspection of the work site. Mr. Jarvis observed the employees performing two roofing procedures: the application of layers of felt and paper with hot tar and the installation of flashing. The tar is about 350-450 degrees when it is applied to the surface with an eight foot long mop. Working with the "mopper" is a roll man who places the felt or paper on the hot tar. Mr. Jarvis observed the team at about 51/2-7 feet from the edge and stated that it was impossible to lay a flat roof without the employees going to the edge. The person installing the flashing was also required to be on the edge of the roof and to kneel in the gutter. It is undisputed that the employees did not use safety belts or lifelines and that the company did not require them to do so.
 
 
 5
 Based on Jarvis' observations, the agency issued a citation charging the company with a serious violation of 29 C.F.R. § 1926.500(d)(1) and 29 C.F.R. § 1926.28(a) and a proposed penalty of $525. The 29 C.F.R. § 1926.500(d)(1) reference was deleted on the Secretary of Labor's unopposed motion to amend the citation. The nonserious items were not contested. The relevant contested portion of the citation charges:
 
 
 6
 Employees working on the roof were not protected by safety belts, used in conjunction with lifelines and/or lanyards, from the hazard of falling.
 
 
 7
 App. 5a-6a.
 
 
 8
 A hearing on the merits was held before ALJ Osterman who held that (1) the roof presented a fall hazard and (2) the company could have devised a lifeline system without creating greater hazards. On discretionary review, the Commission affirmed the ALJ, holding (1) that the company had a duty to provide lifeline protection despite evidence that industry practice would not have required it, and (2) that the use of safety belts and lifelines would not have created greater hazards.
 
 
 9
 II. THE STANDARD FOR THE DETERMINATION OF A VIOLATION UNDER 29 C.F.R. § 1926.28(a).
 
 
 10
 Section 1926.28(a) is a construction industry standard promulgated under 29 U.S.C. § 654(a)(2) of the Occupational Safety and Health Act of 1970. It provides:
 
 
 11
 § 1926.28 Personal protective equipment.
 
 
 12
 (a) The employer is responsible for requiring the wearing of appropriate personal protective equipment (1) in all operations where there is an exposure to hazardous conditions or (2) where this part indicates the need for using such equipment to reduce the hazards to the employees.
 
 
 13
 It is only the first test for application of the standard "in all operations where there is an exposure to hazardous conditions" that is at issue here.[1] This section is one of the enumerated standards for the construction industry and is analogous to other such specific standards for other industries.[2] Since the language of this type of standard is similar in breadth to the general duty clause language,[3] analogies are also appropriate to that clause. Employers have challenged these types of regulatory provisions (1926.28(a) and 1910.132) as unconstitutionally vague because the regulations fail to provide adequate notice to the employer of what conduct is prohibited.[4] In order to uphold the regulations in the face of such a constitutional attack, the first test of the regulation ((1)) has been held to imply an objective standard the reasonably prudent person test:
 
 
 14
 Whether a reasonable (person) familiar with (the) conditions in the . . . industry would have instituted . . . more elaborate . . . precautions?
 
 
 15
 American Airlines, Inc. v. Secretary of Labor, 578 F.2d 38, 41 (2d Cir. 1978).[5]
 
 
 16
 However, the Fifth Circuit recently elaborated on this standard in B. & B. Insulation, Inc. v. OSHRC, 583 F.2d 1364 (5th Cir. 1978). The court rejected the argument that section 1926.28(a) was unconstitutionally vague because it held the standard
 
 
 17
 to require only those protective measures which the knowledge and experience of the employer's industry, which the employer is presumed to share, would clearly deem appropriate under the circumstances.
 
 
 18
 583 F.2d at 1367.[6] The court relied on its earlier decision in Ryder which had stated that as long as the section provided a reasonable warning in light of common understanding and practices, it was not unconstitutionally vague. Thus the court tied the reasonable person test to industry standards in order to ensure an element of foreseeability into the regulation. In addition, the court reasoned that if the government desires to impose a higher standard of safety than customary industry practices exhibit, "the proper recourse is to the standard-making machinery provided in the Act, selective enforcement of general standards being inappropriate to achieve such a purpose." 583 F.2d at 1371. The court deemed that route (promulgation of regulations with a comment period) more desirable because employers would be afforded notice, enforcement would be borne by all equally, and new standards could be formulated with the benefit of the industry's experts. The court therefore concluded that the Commission's holding was not supported by substantial evidence because it was only the word of the compliance officer against the testimony of ten employers and employees.
 
 
 19
 No other circuit has adopted the Fifth Circuit test. Instead, other courts have evaluated the custom and practice of the industry as one aspect of the reasonable person test. These courts have refused to limit the reasonable person test to the custom and practice of the industry because "(s)uch a standard would allow an entire industry to avoid liability by maintaining inadequate safety . . . ." General Dynamics v. OSHRC, 599 F.2d 453, 464 (1st Cir. 1979). We find this policy reason for not making industry standards determinative to be quite compelling. See Cape & Vineyard Div. v. OSHRC, 512 F.2d 1148, 1152 (1st Cir. 1975) (in context of § 1910.132(a), "(t)here may . . . be instances where industry practice fails to take reasonable precautions against hazards generally known in the industry; in such event it may not be unfair to hold the employer to a standard higher than that of actual practice."); Brennan v. Smoke-Craft, Inc., 530 F.2d 843, 845 (9th Cir. 1976); American Airlines, Inc. v. Sec. of Labor, 578 F.2d at 41.
 
 
 20
 Moreover, we are unpersuaded that the Secretary's only appropriate course of action is to utilize the "standard-making" machinery because it is within the Secretary's discretion whether to proceed between ad hoc litigation or regulation.[7] We find no abuse of discretion in this instance.[8] However, this resolution does not complete our inquiry. We must determine whether there is substantial evidence to support the Commission's findings under this reasonably prudent person standard.
 
 
 21
 III. THE COMMISSION'S FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.
 
 
 22
 We are presented with the question of whether a reasonable person familiar with the factual circumstances surrounding the allegedly hazardous condition, including any facts unique to this particular industry, would recognize a hazard warranting the use of personal protective equipment. There are actually three factors to evaluate under this standard: recognition of a hazard, feasibility of alternatives, and whether the alternatives would create a greater hazard. The burden of proof rests with the Secretary to prove all elements of a violation of a general safety standard.[9]
 
 
 23
 a. Recognition of a Hazard and the Feasibility of Alternatives.
 
 
 24
 The Commission found that the hazard in this case was obvious, and exceeded the hazard normally presented by a flat roof because of the manner in which the sides steeply sloped into the gutter. The only evidence in the record that supports a finding of a recognized hazard is the testimony of OSHA's compliance officer and safety expert witness, Mr. Jarvis. Although Jarvis testified that he would have issued the citation even if it had been a standard flat roof, he also testified, and the Commission noted, that this roof was unique and was not a normal flat roof. The company's evidence of whether the industry would recognize this roof as a flat roof was appropriately considered, but was not found to be determinative. Because we find that there is substantial evidence to support the conclusion that this roof was not an ordinary flat roof, we do not accord great weight to the evidence concerning industry custom with regard to flat roofs in general.
 
 
 25
 The citation in this case issued for a serious violation because the only serious hazard that could occur from the violative condition was falling from the roof to the concrete ground. Obviously, such a fall would result in death or serious harm within the meaning of OSHA's definition of "serious." See 29 U.S.C. § 666(j) (1976).[10] The Secretary of Labor argues that since the only likely harm is of a serious nature, there is an obvious recognizable hazard. But this does not answer Voegele's contention concerning the probability of occurrence of this extreme harm in the context of a flat roof. Because substantial evidence suggests that this roof was not an ordinary flat roof, however, we hold that where no protective equipment was provided and where there was a risk of serious injury, there was an obvious hazard.[11]
 
 
 26
 It is the Secretary's burden to demonstrate and describe feasibility and the likely utility of particular measures that the employer could have used.[12] The appropriate weight to be accorded to industry practice of whether these suggested methods were feasible and a reasonable person would have utilized them in the context of the hazard presented, is best summarized as follows:
 
 
 27
 This is not to say that safety precaution must find general usage in (the) industry . . . . The question is whether a precaution is recognized by safety experts as feasible, not whether the precaution's use has become customary.
 
 
 28
 National Realty & Const. Co., Inc. v. OSHRC, 489 F.2d at 1266 n.37. However, it would be error totally to ignore or fail to consider prevailing industry standards.[13]
 
 
 29
 Jarvis testified that lifelines and safety belts would have been appropriate. He described four different ways of implementing these precautions. These methods were described with particular detail and involved lifelines that would be above the roof. Voegele argues that there is not substantial evidence to support feasibility because the only evidence to that effect was Jarvis' testimony that he had seen the system used on a school several years ago. But the systems were designed with sufficient specificity to demonstrate their feasibility.[14] However, in light of all the industry evidence, Jarvis' testimony would not be substantial evidence to support a violation if the citation had issued solely because the officer presumed that safety belts should be required on any flat roof. But there is substantial evidence to support the finding that since this roof was unique and the hazard was greater than the hazard of a flat roof, safety belts and lines were required.
 
 
 30
 b. The Greater Hazard Defense
 
 
 31
 Voegele's last contention is that the installation of these methods would produce a greater hazard. The company has a duty under the regulation to erect such a system unless it would create a greater hazard. The greater hazard defense has been recognized by this court as a narrow defense. See General Electric Co. v. Secretary of Labor, 576 F.2d 558, 560 (3d Cir. 1978). General Electric requires the employer to show that (1) compliance will result in a greater hazard, (2) alternative means of protecting employees are unavailable, and (3) a variance would be inappropriate. It appears that the company has failed to demonstrate at least the first prong of this test.
 
 
 32
 The company presented testimony that a greater hazard would exist because the risk of employees tripping and burning themselves on hot tar would be greatly increased. This increase in risk would be due to lifelines becoming tangled on the roof and possibly tipping over buckets of tar. However, the systems suggested by Jarvis would utilize heavy buggies for tar which would not result in a hazard of spillage or the splashing of tar. Moreover, the lifeline system could be installed with a static line that would be rigged above the mopper so that there would not be a tripping hazard. Even if the lines became entangled above the employees (which could be minimized with certain positioning), their movement would not be impaired. In addition, only two men would have to be tied off while tar was being applied. The company also argued that the tension necessary to implement safety lines above the roof would upset the balance of the men. But adjustment to balance tension is obviously less of a hazard than falling off the roof.[15]
 
 
 33
 There was also no demonstration of alternative means or that an application for a variance would have been inappropriate.[16] Thus the conclusion of the ALJ and the Commission that the hazard of falling off this particular roof was a greater potential danger than tripping or being burned by hot tar was supported by substantial evidence. The greater dangers that the company postulates are for the most part avoided by the systems proposed by Jarvis.
 
 
 
 [1]
 The Secretary of Labor briefly mentions that the second test is satisfied here because other regulations in Part 1926 require the use of the equipment. See Appellee's Brief at 14 n.14. This argument has only been addressed in this one footnote and was evidently not raised before OSHRC. It would therefore be inappropriate to consider this issue on review here
 
 
 [2]
 See 29 C.F.R. § 1910.132 (1979)
 
 
 [3]
 See 29 U.S.C. § 654(a)(1) (1976) (general duty clause)
 
 
 [4]
 See, e. g., B. & B. Insulation, Inc. v. OSHRC, 583 F.2d 1364 (5th Cir. 1978); Ryder Truck Lines, Inc. v. Brennan, 497 F.2d 230 (5th Cir. 1974); McLean Trucking Co. v. OSHRC, 503 F.2d 8 (4th Cir. 1974)
 
 
 [5]
 See McLean Trucking Co. v. OSHRC, 503 F.2d at 10; Ryder Truck Lines, Inc. v. Brennan, 497 F.2d at 233
 
 
 [6]
 Accord Power Plant Division v. OSHRC, 590 F.2d 1363, 1365 (5th Cir. 1979)
 
 
 [7]
 See Securities Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); Arkansas-Best Freight Systems, Inc. v. OSHRC, 529 F.2d 649, 654 (8th Cir. 1976) (§ 1910.132(a) violation)
 
 
 [8]
 Since we decline to follow the Fifth Circuit's reasoning and instead adopt the reasoning of other circuits, there is no need to address the appellant's contention that the Commission has acted beyond its authority in its failure to follow the Fifth Circuit. Cf. Allegheny General Hospital v. NLRB, 608 F.2d 965 (3d Cir. 1979)
 
 
 [9]
 Power Plant Division v. OSHRC, 590 F.2d at 1365; Bristol Steel & Iron Works v. OSHRC, 601 F.2d 717, 724 (4th Cir. 1979); see 29 C.F.R. § 2200.73(a). This has also been the rule where the Secretary is seeking to prove a violation of the general duty clause. See National Rlty. & Constr. Co., Inc. v. OSHRC, 489 F.2d 1257, 1263 (D.C.Cir.1973)
 
 
 [10]
 A serious violation exists if:
 (T)here is a substantial probability that death or serious physical harm could result . . . unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
 29 U.S.C. § 666(j). See Bethlehem Steel Corp. v. OSHRC, 607 F.2d 871, 879 (3d Cir. 1979).
 
 
 [11]
 See id. at 874; Jensen Const. v. OSHRC, 597 F.2d 246, 249 (10th Cir. 1979) (obvious falling hazard under § 1920.28(a) where employee worked 17-23 feet above ground and astride structural beams with no protective equipment); Usery v. Marquette Cement Mfg. Co., 568 F.2d 902, 909 (2d Cir. 1977) (general duty clause)
 
 
 [12]
 See National Realty & Construct. Co., Inc. v. OSHRC, 489 F.2d at 1267
 
 
 [13]
 See American Airlines, Inc. v. Secretary of Labor, 578 F.2d 38, 40 (2d Cir. 1978) (remand in § 1910.132 violation because ALJ considered reasonableness of precautions without considering prevailing industry standards); Brennan v. Smoke-Craft, Inc., 530 F.2d 843 (9th Cir. 1976); Cape & Vineyard v. OSHRC, 512 F.2d at 1153 (no OSHA witness qualified as expert as to safety precautions within industry in § 1910.132a citation); Cf. Bethlehem Steel Corp. v. OSHRC, 607 F.2d at 875 (opinion of the Compliance Officer, which is actually at variance with promulgated safety standard, is not substantial evidence against unequivocal testimony of industry experts)
 
 
 [14]
 See Bristol Steel & Iron Works, Inc. v. OSHRC, 601 F.2d 717, 723-24 (4th Cir. 1979)
 
 
 [15]
 The company contends that the Assistant Secretary of Labor has recognized as part of a proposed rule for low-pitched roofs that safety belt systems are difficult or impossible. See 44 Fed.Reg. 48,276 (Aug. 17, 1979). Assuming, arguendo, that this reference is at all relevant to this case, that reference must be evaluated in context. The evaluation of safety belt systems was made in a report prepared for the industry, the National Contractors Association, and was simply recited in the introduction to the proposed rules. Also in the same introduction is a report of the National Institute for Occupational Safety and Health which finds that the roofing industry has one of the highest lost-time-injury accident rates of any industry, and that a large percentage of these accidents are from falling off roofs. Id. at 48,275. Finally, the proposed rules require the use of one or more of the following systems for low-pitched roofs: motion-stopping-safety systems (which include safety belt systems), warning lines, and/or direct supervision. Finally, it should be noted again that the regulation is only concerned with low-pitched roofs and not the hybrid-type roof involved in this case
 
 
 [16]
 The finding that an exception from a standard should be allowed in the form of a variance, because of potential greater hazard, is not inconsistent with a finding that a standard has been violated. See General Electric Co. v. Secretary of Labor, 576 F.2d at 560