# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60215

SANDERSON FARMS, INCORPORATED,

Petitioner

v.

THOMAS E. PEREZ, SECRETARY, DEPARTMENT OF LABOR,

Respondent

United States Court of Appeals
Fifth Circuit

**FILED**
January 22, 2016

Lyle W. Cayce
Clerk

Petition for Review of an Order of the Occupational
Safety and Health Review Commission

Before SMITH, WIENER, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Sanderson Farms, Inc. petitions for review of an order of the Occupational Safety and Health Review Commission (OSHRC) citing Sanderson Farms for an unguarded arbor and projecting key in violation of the mechanical power-transmission apparatus regulation, 29 C.F.R. § 1910.219. The petition for review is **DENIED** as to the citation for the unguarded arbor and **GRANTED** as to the key.

## FACTS AND PROCEDURAL BACKGROUND

Sanderson Farms, Inc., a nation-wide poultry producer, operates a chicken processing plant in Laurel, Mississippi. On January 15, 2014, an Occupational Safety and Health Administration compliance officer conducted

a planned inspection of the facility. Two machines found at the plant are at issue in this case—the chicken cutting table and the deboning station. Sanderson Farms was cited for operating the chicken cutting table with an unguarded, rotating arbor, and for having an unsmooth projecting shaft end below the surface of the deboning station, but above the platform where the workers stood, because it had a key protruding on its surface.

The chicken cutting table includes a stationary saw that is used to cut whole chickens in half. Whole chickens are deposited on the table through a metal chute. The operator then takes a whole chicken, puts one hand on each end of the chicken, guides the chicken through the stationary saw to cut the chicken in half, and drops the cut halves in a bucket underneath the table. The sawblade is held in place by an arbor which is connected to the shaft of the saw motor. The arbor is connected to the motor shaft by two screws that sit slightly above the shaft. The motor rotates the motor shaft, arbor, and sawblade. The arbor and motor shaft sit less than seven feet from the floor, connected with a one-quarter inch gap between them, and rotate together at 1,750 rotations-per-minute. The arbor has several impressions, creating a slight rise in the metal, made by the teeth of a wrench used to connect the arbor to the shaft. When a worker moves a chicken through the saw, his or her hands come within six to eight inches of the rotating arbor.

The compliance officer found that the arbor was unguarded in violation of 29 C.F.R. § 1910.219(c)(2)(i), which prohibits unguarded horizontal shafting seven feet or less off the ground. The compliance officer concluded that if an operator came into contact with the rotating arbor, the rotation could force the hand away from the worker's body and cause injury. As a result, the compliance officer cited the unguarded arbor as a serious violation of the mechanical power-transmission apparatus regulation.

No. 15-60215

At the deboning station, workers stand on an eight-inch platform. One of the deboning stations included a protruding, rotating shaft end located two-and-one-half feet above the platform. A key extended roughly one-sixteenth to one-eighth of an inch from the surface of the shaft end, which rotated slowly at 40 rotations-per-minute. The key was unguarded and connected to the shaft end as if it were permanently joined.

The compliance officer found that the surface of the unguarded rotating shaft end was not smooth as required by 29 C.F.R. § 1910.219(c)(4)(i). Because workers leaned towards and then away from the rotating shaft end, the compliance officer determined that an article of loose clothing could become tangled on the key and result in a broken bone or that snagged clothing could pull a worker backwards, causing the worker to fall from the platform and possibly suffer a concussion or broken bone. As a result, the compliance officer cited Sanderson Farms for a serious violation of the mechanical power-transmission apparatus regulations because of the presence of an unsmooth, unguarded, rotating shaft end.

Following a hearing, an Administrative Law Judge (ALJ) found that the Secretary of Labor carried the burden to prove both citations by a preponderance of the evidence. Specifically, the ALJ found that it was undisputed that the rotating arbor at the cutting station was seven feet or less above the ground. Further, she found that there was sufficient evidence to sustain a violation for the unguarded arbor because the arbor is a "vital and integral part of the power transmission apparatus and must be considered part of it" because it rotates at the same speed and presents the same hazard as the transmission shaft. The ALJ also found that there was sufficient evidence to establish that the key extending from the protruding shaft end was a violation because the standard required that the shaft end be smooth, the plain meaning of smooth is a "continuous even surface," and the fact that the key extended

3

No. 15-60215

from the shaft end meant the shaft end could not have a continuous even surface.  Based on these findings, the ALJ fined Sanderson Farms $1,500.00.

Sanderson Farms sought discretionary review with the OSHRC.  The case was not directed for review and the ALJ decision became a final order of the OSHRC on January 30, 2015.  Sanderson now petitions for review.

## DISCUSSION

Findings of fact of the OSHRC must be accepted if supported by "substantial evidence on the record considered as a whole. . . ."  29 U.S.C. § 660(a).  *See also Chao v. OSHRC*, 480 F.3d 320, 323 (5th Cir. 2007).  This requires the court to uphold factual findings "if a reasonable person could have found what the [Commission] found, even if the appellate court might have reached a different conclusion . . . ."  *Valmont Indus. v. NLRB*, 244 F.3d 454, 463 (5th Cir. 2001) (quoting *Standard Fittings Co. v. NLRB*, 845 F.2d 1311, 1314 (5th Cir. 1988).  *See also Trinity Marine Nashville, Inc. v. OSHRC*, 275 F.3d 423, 426-27 (5th Cir. 2001).  Legal conclusions are reviewed for whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *Austin Indus. Specialty Servs., L.P. v. OSHCR*, 765 F.3d 434, 438-39 (5th Cir. 2014); *Trinity Marine*, 275 F.3d at 427.

OSHA has the burden of proving sufficient facts to support the citation.  *Champlin Petroleum Co. v. OSHRC*, 593 F.2d 637, 640 (5th Cir. 1979).  The Secretary of Labor must show by a preponderance of the evidence: (1) that the cited standard applies; (2) noncompliance with the cited standard; (3) access or exposure to the violative conditions; and (4) that the employer had actual or constructive knowledge of the conditions through the exercise of reasonable due diligence.  *Jesse Remodeling, LLC*, 22 BNA OSHC 1340 (No. 08-0348, 2006); *Atlantic Battery Co.*, 16 BNA OSHC 2131 (No. 90-1747, 1994).  Where a standard presumes a hazard, however, the Secretary need only show the

No. 15-60215

employer violated the terms of the standard. *Kaspar Electroplating Corp.*, 16 BNA OSHC 1517 (No. 90-2866, 1993).

Sanderson Farms brings three challenges to the order of the OSHRC. First, Sanderson Farms contends that employers must, at the prima facie stage of enforcement proceedings, be given an opportunity to rebut the presumption of hazard incorporated in safety regulations. Second, Sanderson Farms contends that there is not substantial evidence to support the citation for the unguarded arbor. Finally, Sanderson Farms contends that there is not substantial evidence to support the citation for the projecting key. We begin with the presumptions argument.

I.

Sanderson Farms maintains that a footnote in *Bunge Corp. v. Secretary of Labor*, requires that employers have an opportunity to rebut the presumption of hazard when determining whether a prima facie case for a violation has occurred. *See* 638 F.2d 831, 835 n.6 (5th Cir. Unit A Mar. 1981) ("Since hazard is presumed, an employer would rebut the Secretary's case by showing no hazard arises from the particular condition."). The Secretary counters that the footnote is more accurately characterized as a summary of the de minimis affirmative defense, which serves as an opportunity for the employer to show that a violation of a safety standard presents no hazard. We agree with the Secretary.

An occupational safety and health standard may only be promulgated if "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). Since OSHA is required to determine that there is a hazard before issuing a standard, the Secretary is not ordinarily required to prove the existence of a hazard each time a standard is enforced. *Bunge Corp.*, 638 F.2d at 835; *National Engineering & Contracting Co. v. OSHA*, 928 F.2d 762, 768 (6th Cir. 1991); *Greyhound Lines–West v.*

*Marshall*, 575 F.2d 759, 762 (9th Cir. 1978).  Therefore, hazard is generally presumed in safety standards unless the regulation requires the Secretary to prove it.

There has been no OSHRC, ALJ, or federal court decision adopting Sanderson Farms's reading of the *Bunge Corp.* footnote.  In contrast, it is widely accepted that lack of hazard is an affirmative defense to a prima facie case establishing violation of a safety standard.  *See* Mark Rothstein, OCCUPATIONAL SAFETY AND HEALTH LAW § 5:24 (2015).  This affirmative defense characterizes violations as de minimis when an employer shows that the violation has "no direct or immediate relationship to safety or health."  29 U.S.C. § 658(a).  The de minimis label carries no adverse consequences and would achieve the result that Sanderson Farms seeks.  Therefore, the *Bunge Corp.* footnote is more accurately read as a summary of the de minimis affirmative defense and the presumption of hazard is not rebuttable at the prima facie stage of enforcement proceedings.

## II.

Sanderson Farms was found to be in violation of 29 C.F.R. § 1910.219(c)(2)(i) because the arbor of the chicken-cutting machine was unguarded horizontal shafting of a mechanical power transmission apparatus less than seven feet from the ground.  The violation was found to be serious but of low gravity.  Sanderson challenges these findings, asserting that the regulation did not apply to the unguarded arbor, that Sanderson Farms did not have knowledge sufficient to violate the regulations, and that the ALJ erred in characterizing the violation as serious but of low gravity.

## A.

"[T]he test for the applicability of any statutory or regulatory provision looks first to the text and structure of the statute or regulations . . . ."  *Unarco*

No. 15-60215

*Commercial Products*, 16 BNA OSHC 1499 (No. 89-1555, 1993). Title 29 C.F.R.
§ 1910.219(c)(2)(i) provides:

> All exposed parts of horizontal shafting seven (7) feet or less from
> floor or working platform, excepting runways used exclusively for
> oiling, or running adjustments, shall be protected by a stationary
> casing enclosing shafting completely or by a trough enclosing sides
> and top or sides and bottom of shafting as location requires.

The text renders the regulation applicable only to horizontal shafting of a
mechanical power-transmission apparatus. An arbor is defined as "a principal
supporting rod or bar; a metal *shaft* or axis on which a revolving cutting tool .
. . is mounted." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993)
(emphasis added). Shaft is defined as "a bar that is commonly cylindrical and
solid but sometimes hollow, especially when of large diameter, and is used to
support rotating pieces . . . or to transmit power or motion by rotation." *Id.*
Therefore, plain dictionary meanings of arbor and shaft call for the conclusion,
supported by the record, that the regulation is applicable.

Testimony at the hearing established that the arbor is a cylindrical
sleeve that slides over the motor shaft. It is connected to the motor shaft by
two screws as if to make it one piece of shafting. The arbor and motor shaft
provide power and rotate the sawblade; without both the arbor and motor
shaft, the sawblade would not spin. Thus, the ALJ did not err when she found
that the arbor was a "vital and integral part of the power transmission
apparatus." 29 C.F.R. § 1910.219(c)(2)(i) applies to the arbor.

B.

To prove knowledge, "the Secretary must show that the employer knew
of, or with exercise of reasonable diligence could have known of the non-
complying condition." *Trinity Industries v. OSHRC*, 206 F.3d 539, 542 (5th
Cir. 2000). Substantial evidence, therefore, must show that Sanderson Farms
knew, or should have known, that the arbor was unguarded shafting of a

No. 15-60215

mechanical power-transmission apparatus located less than seven feet from the floor.

A maintenance program, such as the one operated by Sanderson Farms, that fails to recognize or remedy hazardous conditions can be a basis for knowledge. *See E. Tex. Motor Freight, Inc. v. OSHRC*, 671 F.2d 845, 848 (5th Cir. 1982). The supervisors of that program were aware that the arbor was not guarded. In fact, a Sanderson Farms manager testified that guards were not installed over the arbor because the company did not believe that the rotating arbor shaft was hazardous. This knowledge is imputed to the company. *W.G. Yates & Sons Construction Co., Inc. v. OSHRC*, 459 F.3d 604, 607 (5th Cir. 2006) ("[W]hen a corporate employer entrusts to a supervisory employee its duty to assure employee compliance with safety standards, it is reasonable to charge the employer with the supervisor's knowledge[,] actual or constructive[,] of non-complying conduct of a subordinate.") (quoting *Mountain States Telephone & Telegraph Co. v. OSHRC*, 623 F.2d 155, 158 (10th Cir. 1980)).. Therefore, there is substantial evidence on the record to establish that Sanderson Farms possessed knowledge of the violative conditions.

## C.

"A violation of [a safety standard] is designated as serious, not serious, or *de minimis.*" *Phoenix Roofing, Inc. v. Dole*, 874 F.2d 1027, 1031 (5th Cir. 1989). The ALJ characterized the unguarded arbor as serious, but of low gravity. There is substantial evidence in the record to support this finding.

A serious violation exists "if there is a substantial probability that death or serious physical harm could result from [the] condition[s]." 29 U.S.C. § 666(k); *East Texas Motor Freight*, 671 F.2d at 849. The ALJ credited testimony that the arbor has three catch points for loose clothing that present a hazard: 1) clothing could catch on the screws protruding from the arbor, 2) the teeth marks created a rise in the metal that could snag clothing, and 3) clothing could

get caught in the small space between the arbor and the blade. Because the arbor and motor shaft rotate at 1,750 rotations-per-minute, tangled clothing could pull a worker toward the machine and break a bone, presenting a substantial probability of serious physical harm. This danger is compounded by the power switch not being within reach of where workers stand when operating the machine.

Sanderson Farms nevertheless argues that there is not substantial evidence to support the characterization of the violation because no employee had ever been injured using the cutting saw. But, safety regulations are preventative, not reactionary and the absence of injury is not evidence of the absence of danger. *See Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir. 1974). Therefore, there is sufficient evidence to support the ALJ's characterization of the violation as serious but of low gravity.

The petition for review is denied for the violation of 29 C.F.R. § 1910.219(c)(2)(i).

### III.

Sanderson Farms also challenges the citation under 29 C.F.R. § 1910.219(c)(4)(i), arguing that the projecting shaft end subsection of the mechanical power-transmission apparatus regulation does not apply to the projecting key. We agree.

Title 29 C.F.R. § 1910.219(c)(4)(i) provides that "[p]rojecting shaft ends shall present a smooth edge and end and shall not project more than one-half the diameter of the shaft unless guarded by nonrotating caps or safety sleeves." The application of this standard, however, was in error because the mechanical power-transmission apparatus regulation includes a standard for "keys," which requires that "[a]ll projecting keys, setscrews, and other projections in revolving parts shall be removed or made flush or guarded by metal cover." 29 C.F.R. § 1910.219(h)(1). On its face, section (c)(4)(i) may prohibit the

protruding key because the key is not completely even with the surface of the shaft end.  But, "the test for the applicability of any statutory or regulatory provision looks first to the text and structure of the statute or regulations . . . ."  *Unarco Commercial Products*, 16 BNA OSHC 1499 (No. 89-1555, 1993).  Such an inquiry is illuminating, and mandates the conclusion that the wrong standard was applied.

For example, the projecting shaft end standard states that "[u]nused keyways shall be filled up or covered."  29 C.F.R. § 1910.219(c)(4)(ii).  This is most naturally read as requiring that empty keyways be filled or covered to make the shaft end smooth.  But, it does not contemplate a key extending from the keyway, thus implying that keys are not considered part of the shaft end.  That implication is confirmed by 29 C.F.R. § 1910.219(h)(1), which requires that a projecting key be "flush" or covered with a stationary guard.  These specific uses of shaft end, keyway, and key must be given force.  *Bailey v. United States*, 516 U.S. 137, 146 (1995) (instructing that courts should assume that "each term [has] a particular, nonsuperfluous meaning").  Thus, reading the standards together, it is clear that an empty keyway must be filled or covered to be made smooth with the rest of the shaft end.  But, if a key extends from a shaft end, the key must be made flush with the shaft end or covered.

The Secretary and ALJ erred when applying 29 C.F.R. § 1910.219(c)(4)(i) instead of 29 C.F.R. § 1910.219(h)(1) to the protruding key.  *See* 29 C.F.R. § 1910.5(c)(1) ("If a particular standard is specifically applicable to a condition . . . it shall prevail over any different standard which might otherwise be applicable to the same condition . . . .").  If the proper standard had been applied, the ALJ might have found that the key, which was cut down to around one-sixteenth of an inch, was flush with the shaft end.  Because the cited standard was inapplicable, there is not substantial evidence on the record as a

No. 15-60215

whole to sustain the citation. The petition for review is granted in regard to the projecting key alleged to be in violation of 29 C.F.R. § 1910.219(c)(4)(i).

## CONCLUSION

The petition for review is **DENIED** as to the unguarded arbor and **GRANTED** as to the projecting key.