# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2021

Lyle W. Cayce
Clerk

No. 20-60710

DeNucci Constructors, L.L.C.,

*Petitioner*,

*versus*

Occupational Safety and Health Review Commission;
Martin Walsh, Secretary, U.S. Department of Labor,

*Respondents*.

Petition for Review of an Order of the
Occupational Safety and Health Review Commission
OSHRC No. 18-1847

Before Owen, *Chief Judge*, and Smith and Graves, *Circuit Judges*.

Per Curiam:*

DeNucci Constructors, L.L.C. (DeNucci) petitions this court for review of a final order of the Occupational Safety and Health Review Commission (OSHRC) affirming the Occupational Safety and Health Administration's (OSHA's) issuance of a citation and Notification of Penalty

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60710

(Citation) to DeNucci. Because the OSHRC administrative law judge's (ALJ's) factual findings are supported by substantial evidence, and the ALJ's implicit credibility determinations are not contradicted by incontrovertible documentary evidence or physical fact, we deny DeNucci's petition for review.

# I

DeNucci constructs commercial buildings, as well as excavates and installs utilities. On July 30, 2018, DeNucci performed trenching and excavation work at 500 Sabine Street in Austin, Texas. Under the supervision of General Superintendent David Lucas and Foreman Jose Martin Morales, the crew began excavating around 7:15 a.m., with Miguel Hernandez operating the excavator. Hernandez's task was to dig and slope a trench that other crew members could enter to locate existing conduits and pipes for DeNucci to replace. At approximately 9:30 or 10:00 a.m., Hernandez detected sand or gravel, indicating pipes were near, and stopped excavating. Soon after, two laborers/pipe layers, Ramiro Vasquez Paz (Paz) and Daniel Ponce (Ponce), entered the trench to hand-shovel the sand and gravel to locate existing conduits and pipes.

At approximately 10:15 or 10:20 a.m., OSHA Compliance Assistance Specialist Joann Natarajan (CAS Natarajan) happened to walk by the worksite on her way to give a presentation at a nearby hotel. She observed two employees, Paz and Ponce, digging around exposed pipes in the bottom of the trench. Based on her nineteen years of experience and her visual observations of the trench's depth, angle, and slope "for about 30 seconds" from fifteen or twenty feet away, CAS Natarajan determined the trench was unsafe. She immediately called and notified OSHA regarding what she had observed but did not take any photographs or measurements. In response, OSHA sent Compliance Safety and Health Officer Darren Beck (CSHO

2

Beck) to the worksite.  In the meantime, after the conduits and pipes were exposed by hand-shoveling, Hernandez resumed excavation operations.

CSHO Beck arrived at the worksite at approximately 11:40 a.m. to begin inspecting and witnessed DeNucci's employees "dump[] a load of dirt into the bottom of the trench."  CSHO Beck conducted interviews with Paz, Ponce, Superintendent Lucas, and Foreman Morales; took photographs and measurements; and spoke to DeNucci's owner.  During the interviews, CSHO Beck questioned the DeNucci employees as to whether the conditions he observed reflected the conditions present when Paz and Ponce worked in the trench.  He was told "that the depth and the width of the trench had not changed."  Ultimately, CSHO Beck determined that the trench was not in compliance with OSHA regulations at the time Paz and Ponce were in the trench.  Based on CSHO Beck's findings and determinations, OSHA issued the Citation to DeNucci, "with two serious items for violations of 29 C.F.R. § 1926.21(b)(2) and 29 C.F.R. § 1926.652(a)(1)."  DeNucci filed a timely notice of contest, bringing the matter before the OSHRC, and a hearing was held before an OSHRC administrative law judge.

At the onset of the hearing, OSHA withdrew the § 1926.21(b)(2) citation item.  Proceeding with the remaining item, DeNucci produced six witnesses for two days of testimony: CAS Natarajan, Ponce, Paz, Foreman Morales, Superintendent Lucas, and CSHO Beck.  From that testimony, as well as numerous photographic exhibits, the ALJ found that "the trench was 8-9 feet deep" and that DeNucci "did not bench or slope any of the trench's walls at a 1:1 ratio" to that depth, as required under § 1926.652(a)(1). Further, the ALJ found that DeNucci's claims that "the excavation was materially changed," and "the configuration and dimensions of the trench" were "significantly altered," by the excavation operations between the time Paz and Ponce exited the trench and CSHO Beck inspected it "lack merit." The ALJ then affirmed the citation item and assessed a penalty of $4,746.00.

No. 20-60710

DeNucci timely filed a Petition for Discretionary Review with the OSHRC. The OSHRC declined discretionary review, and DeNucci timely filed its petition for review to this court.

DeNucci contends the ALJ's decision should be reversed for two reasons. First, it contends that the ALJ's factual findings are not supported by substantial evidence. Second, DeNucci maintains that the ALJ failed to explain his credibility determinations as required under statute, and OSHRC and circuit court precedent. We disagree.

## II

We review ALJ decisions that the OSHRC declines to review under the same standard that applies to decisions of the OSHRC.[1] We must accept factual findings by the OSHRC, and thus the ALJ in this case, as "'conclusive' if they are supported by 'substantial evidence on the record considered as a whole.'"[2] That is, we must uphold the ALJ's factual findings "if a reasonable person could have found what the [ALJ] found," even if we "might have reached a different conclusion."[3] Contentions based on speculation or derived from inferences upon inferences "do not add support to a finding of substantial evidence."[4]

To establish a prima facie violation of an OSHA standard, the Secretary of Labor (Secretary) must have shown: (1) the cited standard, 29

---

[1] *S. Hens, Inc. v. Occupational Safety & Health Rev. Comm'n*, 930 F.3d 667, 675 (5th Cir. 2019) (citing *Austin Indus. Specialty Servs., L.P. v. Occupational Safety & Health Rev. Comm'n*, 765 F.3d 434, 438-39 (5th Cir. 2014) (per curiam)).

[2] *Id.* at 674 (quoting 29 U.S.C. § 660(a)).

[3] *Id.* (quoting *Sanderson Farms, Inc. v. Perez*, 811 F.3d 730, 734 (5th Cir. 2016)).

[4] *See Brown & Root, Inc. v. NLRB*, 333 F.3d 628, 639, 641 (5th Cir. 2003); *accord TRW, Inc. v. NLRB*, 654 F.2d 307, 312 (5th Cir. Unit A Aug. 1981) ("Suspicion, conjecture and theoretical speculation register no weight on the substantial evidence scale." (first

C.F.R. § 1926.652(a)(1), applied; (2) DeNucci did not comply with the cited standard; (3) DeNucci employees had "access or exposure to the violative conditions"; and (4) DeNucci "had actual or constructive knowledge of the conditions."[5]  DeNucci contests only the second element of the Secretary's case—that DeNucci did not meet the requirements of § 1926.652(a)(1).

> Section 1926.652(a)(1) requires that each employee in an excavation
>
> be protected from cave-ins by an adequate protective system designed in accordance with paragraph (b) or (c) of this section except when:
>
> (i) Excavations are made entirely in stable rock; or
>
> (ii) Excavations are less than 5 feet (1.52m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.[6]

DeNucci does not contend that it used a trench box or otherwise shored or shielded the trench to comply with the standard under paragraph (c).[7]  Nor does DeNucci argue that either exception applies.  Accordingly, we need assess only whether a reasonable person could have found that the trench walls were not sloped or benched at an appropriate angle in accordance with paragraph (b) when Paz and Ponce were in the trench on July 30, 2018.[8]

The parties jointly stipulated that the soil in the trench was Type B soil.  Under paragraph (b), DeNucci was required to safeguard its Type B soil

---

citing *Fla. Steel Corp. v. NLRB*, 587 F.2d 735, 742 (5th Cir. 1979); and then citing *NLRB v. O. A. Fuller Super Mkts., Inc.*, 374 F.2d 197 (5th Cir. 1967))).

[5] *S. Hens, Inc.*, 930 F.3d at 675 (quoting *Sanderson Farms*, 811 F.3d at 735).

[6] 29 C.F.R. § 1926.652(a)(1).

[7] *See id.* § 1926.652(c) (pertaining to support systems, shield systems, and other protective systems).

[8] *See id.* § 1926.652(b).

trench by utilizing a system of benches and slopes at a 1:1 ratio (horizontal distance to vertical rise), or no more than a 45 degree angle.[9]  DeNucci maintains that the ALJ improperly relied on CAS Natarajan's "unsupported speculation" to "establish the condition of the excavation at the time of employee exposure," as well as "unreasonable inferences" to find that "the excavation was not materially altered prior to CSHO Beck's measurement of the excavation."  Moreover, DeNucci continues, "the substantial evidence shows the excavation was not [eight] feet deep when employees worked in the trench."

**A**

First, DeNucci contends that the ALJ "improperly relied [solely] on the implausible, speculative, and conclusory testimony of CAS Natarajan" "to establish the condition of the excavation at the time of employee exposure."  CAS Natarajan's testimony, DeNucci argues, is "the ALJ's only evidence alleging a non-compliant trench at [the] time employees worked within the area."  However, as the Secretary correctly argues, the ALJ's findings regarding the sloping or benching of the trench walls at the time of employee exposure did not rely "solely on unsubstantiated observations by [CAS Natarajan]."  Rather, the findings are also supported by the testimony of DeNucci employees and CSHO Beck's inspection findings and photographs.

Citing testimony of CSHO Beck, the ALJ found that the trench was "8-9 feet deep."  Then, citing photographic exhibits and testimony of five of the six witnesses, the ALJ found that "the west and east walls of the trench

---

[9] *Id.* § 1926.652(b)(2) (discussing "[m]aximum allowable slopes" set forth in Appendices A and B); *id.* pt. 1926, subpt. P, app. B (Table B-1) (listing the maximum allowable slope for Type B soil as "1:1 (45°)"); *see also Mel Gornall Co. Inc.*, 2 BNA OSHC 3305, at *2 (No. 8527, 1975) (ALJ) (explaining the 1:1 ratio).

were not sloped to 45-degrees when Ponce and Paz were in the trench," but rather "were vertical at the time the employees were in the trench and at the time CSHO Beck arrived." Citing photographic exhibits and testimony of CSHO Beck, the ALJ found that the north and south walls of the trench "had inadequate benching and/or sloping or none at all."

As for the benching and sloping of the trench walls, CSHO Beck observed that both the east and west walls of the trench were vertical. Paz and Foreman Morales conceded that the east wall was vertical the last time Paz and Ponce were in the trench, and Superintendent Lucas conceded that a "portion" of the west wall was vertical. Next, CSHO Beck testified that based on the horizontal measurements of the steps on the north wall (two and a half feet each), he determined that the north wall of the trench was benched only five feet. CSHO Beck testified that the south wall was not benched at all or adequately sloped at the time of his inspection. Photographs of the trench taken during CSHO Beck's inspection confirm this observation. Because the south wall abutted a sidewalk, CSHO Beck explained, DeNucci would have had to cut into the sidewalk to extend the trench opening out an adequate length on that side, which DeNucci had not done. Based on the "math and the facts . . . presented," CSHO Beck testified, it is "impossible" that the south wall could have been compliant at or around 10:15 a.m. when Paz and Ponce were in the trench but not 11:40 a.m. when CSHO Beck observed the trench.

From Paz's, Foreman Morales's, Superintendent Lucas's, and CSHO Beck's testimony, a reasonable person could find, as the ALJ did, that at least one of the walls of the trench was not properly sloped or benched for any trench five feet or deeper at the time Paz and Ponce were in the trench. Thus, irrespective of whether CAS Natarajan's testimony is based on speculation and thus can or cannot support a finding of substantial evidence, the testimony of the DeNucci employees, as well as CSHO Beck, is not

speculation and supports a finding of substantial evidence that the condition of the trench was noncompliant at the time of employee exposure.

**B**

Second, DeNucci argues that "the ALJ improperly relied upon unreasonable inferences when he held the excavation was not materially altered prior to CSHO Beck's measurement of the excavation." DeNucci does not contend that the trench complied with § 1926.652(a)(1) at the time of CSHO Beck's inspection. Instead, DeNucci argues that the trench was materially altered after Paz and Ponce exited the trench and before CSHO Beck arrived. In support, DeNucci cites Paz's and Ponce's testimony discussing the digging performed by Hernandez after they exited the trench, as well as CAS Natarajan's testimony that "additional soil ha[d] been removed" before the inspection. However, Paz, Ponce, and CAS Natarajan did not testify regarding material alterations to the benching or sloping of the trench walls, specifically.

Considering the record as a whole, a reasonable person could have found that the east and west walls were vertical both at the time of CSHO Beck's inspection and when Paz and Ponce were in the trench. CAS Natarajan and CSHO Beck testified—and Paz, Foreman Morales, and Superintendent Lucas all conceded—that at least a portion of the east or west wall was vertical, and thus not at a 45-degree angle regardless of the trench's depth, when Paz and Ponce were in the trench. Therefore, a reasonable person could have concluded that the east and west trench walls were not materially altered prior to CSHO Beck's inspection.

A reasonable person could also have found that the south wall was not materially altered. It is undisputed that the south wall abutted a paved sidewalk and was not sloped or benched at the time of CSHO Beck's inspection, and photographs taken during the inspection prove as much. As

for the condition of the south wall when Paz and Ponce were in the trench, Superintendent Lucas testified that the south wall "was a lot cleaner" and sloped at a "one-to-one" angle when Paz and Ponce were in the trench. Ponce testified that the south side of the trench was "clean," in that "nothing was loose," when he was in it, and that "there [were] steps there." Paz testified that the south side seemed "okay" when he was in the trench because "there was concrete." Nevertheless, a reasonable person could have found that it is impossible to slope a trench wall abutting a paved sidewalk properly without cutting into the sidewalk. Further, a reasonable person could have found that it is unlikely DeNucci cut into the sidewalk before 10:15 a.m. to slope the south wall properly and then subsequently replaced the sidewalk in the less than two hours between when Paz and Ponce exited the trench and CSHO Beck inspected it.

There is substantial evidence in the record that the trench walls were not materially altered prior to CSHO Beck's measurement.

## C

Last, DeNucci argues that "substantial evidence shows the excavation was not [eight] feet deep when employees worked in the trench." The ALJ actually found that "the trench was 8-9 feet deep." Nevertheless, DeNucci's final argument fails for a similar reason as its first and second.

It is inconsequential whether there is substantial evidence that the trench was eight to nine feet deep. There is substantial evidence that, at the time Paz and Ponce were in the trench, three of the four trench walls were not benched or sloped at a 1:1 ratio with a depth of five feet or more. DeNucci has waived any argument that the trench was less than five feet deep (and

thus that the benching and sloping requirements do not apply).[10] So, the legal conclusion that the trench was noncompliant at or around 10:15 a.m. is the same regardless of the precise trench depth.[11]

In sum, a reasonable person could have found that, at the time Paz and Ponce were in the trench, the trench walls were not sloped or benched at a 1:1 ratio, or an angle of 45 degrees or less, in accordance with 29 C.F.R. § 1926.652(b).[12]    Thus, the ALJ's factual findings are supported by substantial evidence.

## III

DeNucci also contends that the ALJ failed to explain his credibility determinations as required under the Administrative Procedure Act (APA), as well as OSHRC and circuit court precedent.  We will not overturn the OSHRC's, and thus the ALJ's, credibility determinations "unless there is [incontrovertible] documentary evidence or physical fact which contradicts it."[13]  More specifically, the "ALJ's credibility determinations are binding

---

[10] *See Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019) (noting that failure to adequately brief an issue on appeal can constitute waiver of that argument); *see also* Fed. R. App. P. 28(a)(8)(A).

[11] *Cf. S. Hens, Inc. v. Occupational Safety & Health Rev. Comm'n*, 930 F.3d 667, 675 (5th Cir. 2019) ("The court reviews legal conclusions to determine whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (first quoting 5 U.S.C. § 706(2)(A); then quoting *Sanderson Farms, Inc. v. Perez*, 811 F.3d 730, 734-35 (5th Cir. 2016); and then quoting *Trinity Marine Nashville, Inc. v. Occupational Safety & Health Rev. Comm'n*, 275 F.3d 423, 427 (5th Cir. 2001))).

[12] *See* 29 C.F.R. § 1926.652(b).

[13] *Boeta v. Fed. Aviation Admin.*, 831 F.3d 636, 641 (5th Cir. 2016) (quoting *Miranda v. Nat'l Transp. Safety Bd.*, 866 F.2d 805, 807 (5th Cir. 1989)); *accord Kelly Springfield Tire Co., Inc. v. Donovan*, 729 F.2d 317, 322 n.6 (5th Cir. 1984) (quoting *Cleveland Consol., Inc. v. Occupational Safety & Health Rev. Comm'n*, 649 F.2d 1160, 1168 (5th Cir. 1981)); *see also Delek Refin., Ltd. v. Occupational Safety & Health Rev. Comm'n*, 845 F.3d 170, 184 n.18 (5th

No. 20-60710

unless:" (1) the ALJ "failed to justify" his credibility choice, (2) "the credibility choice is unreasonable," (3) "the choice contradicts other findings," or (4) "the choice is based upon inadequate reasons or no reason."[14]

Here, the ALJ's justification for his credibility determinations was limited to: "The factual background is based on the credible record evidence, as discussed below, and consideration of the record as a whole. Contrary evidence is not credited." DeNucci improperly argues that because the APA requires the ALJ to "include a statement of--(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record,"[15] the ALJ's failure to justify his credibility choice "serve[s] to invalidate the agency's decision." Rather, when an "ALJ has failed to justify his credibility choice, the court is free to review the record and independently reach its own conclusion."[16] Based on our review of the record in Part II, we independently reach our own conclusion in agreement with the ALJ, as the ALJ's implicit credibility determinations are not contradicted by incontrovertible documentary

---

Cir. 2016) (reviewing for harmless error in the administrative law context); *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011) (same).

[14] *Adams & Assocs., Inc. v. NLRB*, 871 F.3d 358, 369 (5th Cir. 2017) (quoting *UNF W., Inc. v. NLRB*, 844 F.3d 451, 457 (5th Cir. 2016)); *see also Acme Energy Servs. v. Occupational Safety & Health Rev. Comm'n*, 542 F. App'x 356, 362 & nn.27-29 (5th Cir. 2013) (per curiam) (rejecting the argument that the OSHRC ALJ's credibility findings were inadequate when the ALJ made clear the ALJ was crediting a witness's testimony, made necessary credibility determinations, provided reasons for the credibility determinations, and made other essential findings of fact).

[15] 5 U.S.C. § 557(c)(3)(A).

[16] *NLRB v. Motorola, Inc.*, 991 F.2d 278, 282 (5th Cir. 1993) (citing *Lord & Taylor v. NLRB*, 703 F.2d 163, 165 (5th Cir. 1983)).

evidence or physical fact. Similarly, as discussed in Part II, the ALJ's implicit credibility choices were reasonable and did not contradict other findings.

Finally, unlike the ALJs in the cases DeNucci cites, while the ALJ stated he did not credit "contrary evidence," he never rejected or excluded any specific testimony or evidence, especially not without reason.[17] For example, DeNucci improperly assesses the ALJ's conclusion that "the weight of the evidence indicates[, Paz and Ponce] were in the excavation 6-7 minutes each and separately" as a determination by the ALJ that CAS Natarajan was not credible because CAS Natarajan testified that Paz and Ponce were in the trench at the same time. But that conclusion was hardly an adverse credibility determination by the ALJ, as it "relie[d] very little on his assessment of [CAS Natarajan's] credibility. Instead, the overwhelming factor in the decision was"[18] the weight of all the record evidence collectively.[19]

Thus, because the ALJ's implicit credibility determinations are not contradicted by incontrovertible documentary evidence or physical fact, and the ALJ never rejected or excluded any specific testimony or evidence without reason, reversal is not warranted on this basis.

---

[17] *See Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989) (per curiam) (finding party's argument that the ALJ should be reversed because the ALJ did not make credibility findings "spurious" because the ALJ considered and accepted all testimony and thus made "[i]mplicit credibility findings").

[18] *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam) (affirming the ALJ's decision when the ALJ's decision "relie[d] very little on his assessment of [a witness's] credibility. Instead, the overwhelming factor in the decision was medical evidence from a variety of sources").

[19] *Cf. id.* at 622.

No. 20-60710

\*    \*    \*

For the foregoing reasons, DeNucci's petition for review is DENIED.